IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

MELISSA ANN LARAWAY,        )
                            )
    Plaintiff,              )
                            )
                            )   No. 3:15-cv-00676
v.                          )   Senior Judge Haynes
                            )
SOCIAL SECURITY ADMINISTRATION,  )
                            )
    Defendant.              )

**MEMORANDUM**

Plaintiff, Melissa Ann Laraway, filed this action under 42 U.S.C. § 405(g) against the Defendant, Carolyn Colvin, Acting Commissioner of Social Security, seeking judicial review of the Commissioner's decision denying her application for disability insurance benefits under Title II of the Social Security Act, 42 U.S.C. §§ 401 et seq. Plaintiff's application was denied initially and upon reconsideration. Plaintiff requested and received a hearing before an Administrative Law Judge ("ALJ"). (Docket Entry No. 11, Administrative Record, at 64). After that hearing, the ALJ found that Plaintiff did not have a "disability" as defined in the Act. Id. at 9-27. The ALJ found, in sum, that:

1. The claimant meets the insured status requirements of the Social Security Act through December 31, 2016.

2. The claimant has not engaged in substantial gainful activity since October 16, 2011, the alleged onset date (20 CFR 404.1571 *et seq.*).

3. The claimant has the following severe impairment: lumbar degenerative disc disease (DDD), status post lumbar diskectomy (20 CFR 404.1520(c)).

\* \* \*

4. The claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments

in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525 and 404.1526).

\* \* \*

5. After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) except she can occasionally balance, stoop, kneel, crouch, and crawl; occasionally climb ramps and stairs; no climbing of ladders, ropes, and scaffolds; and no unprotected heights and unguarded moving machinery.

\* \* \*

6. The claimant is unable to perform any past relevant work (20 CFR 404.1565).

\* \* \*

7. The claimant was 44 years old (a younger individual age 18-49) on the alleged disability onset date (20 CFR 404.1563).

8. The claimant has a high school equivalence education and is able to communicate in English (20 CFR 404.1564).

9. Transferability of job skills is not material to the determination of disability because using the Medical-Vocational Rules as a framework supports a finding that the claimant is "not disabled," whether or not the claimant has transferable job skills (See SSR 82-41 and 20 CFR Part 404, Subpart P, Appendix 2).

10. Considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform (20 CFR 404.1569 and 404.1569(a)).

11. The claimant has not been under a disability, as defined in the Social Security Act, from October 16, 2011, through the date of this decision (20 CFR 404.1520(g)).

Id. at 14, 17, 22-23. On May 19, 2015, the Appeals Council denied Plaintiff's request for review.

Id. at 1-8.

Before the Court is Plaintiff's motion for judgment on the administrative record (Docket Entry No. 13) contending, in essence that the ALJ improperly considered the opinion of Plaintiff's treating physician and failed to evaluate properly the credibility of Plaintiff's subjective complaints. In response (Docket Entry No. 15), the Commissioner argues that the ALJ properly evaluated both evidentiary issues.

## A. Review of the Record

Plaintiff, who is 48 years old, has a 12th grade education. Plaintiff asserts a disability based upon the residual effects of post-surgical low back pain and asserts an onset date of October 16, 2011. As to her proof, Plaintiff cites the October 24, 2011 record of the Comprehensive Pain Specialist that Plaintiff rated her pain at 9 on a scale of 10, but that Plaintiff lost her job "missing too much work." Dr. Michael Kellogg noted on November 11, 2011 that Plaintiff was having a "hard time getting out of bed even with oxycodone." Id. at 221. Plaintiff cites a November 8, 2011 MRI that revealed "advanced degenerative disease . . . with central/right disc herniation" at L5/S1. Id. at 190-91. The MRI revealed "severe" bilateral S1 stenosis as well as right greater than left mass effect on the ascending S1 nerve roots and there was also moderate to "severe" narrowing at the spinal canal at L5/S1. Id.

On January 19, 2012, Dr. Daniel Burval performed a discectomy of L4-5. Id. at 310-11. In his post-surgical notes, Dr. Burval observed "massive disc herniation with severe nerve root impingement and there is likely some nerve damage here just from the massive amount of compression from the disc." Id. at 306. On February 10, 2013, Dr. Burval found Plaintiff's right leg pain resolved, but Plaintiff reported chronic back pain for which Dr. Burval recommended chronic pain management. Id. at 300. In a May 8, 2012 letter, Dr. Burval opined that Plaintiff's

degenerative disc disease could not be treated with additional surgery and stated "I believe she cannot be an active member in the workforce." Id. at 303.

Since her surgery, Plaintiff was treated at the Madison Family Clinic/United Neighborhood Health Services. On June 6, 2012, Plaintiff complained of "subsequent chronic pain" citing her prior surgery and rated her pain as 10 on a scale of 10. Dr. Ada Emuwa increased Plaintiff's dosage of Gabapentin and also prescribed Tramadol for pain management. Id. at 313.

During an April 30, 2013 visit, Plaintiff stated her low back pain was exacerbated by bending forward, bending over, lifting heavy objects, sudden movement, twisting movement, and walking. Id. at 323. Plaintiff also stated her daily activities, including turning over in bed, aggravated her pain. Id.

On August 1, 2013, Plaintiff reported bilateral shoulder, hip and back pain that were aggravated with "movement," but ibuprofen "work[ed] better." Id. at 319. Plaintiff could afford only over the counter medications. Plaintiff was observed to have a limping gait and wearing a back brace. Id. at 321. Yet, Luz Salazar, the attending Nurse Practitioner prescribed cessation of smoking and daily walking exercise. Id.

On April 9, 2012, Plaintiff had a mental health examination by a consultant. Plaintiff reported that her mother is "required to care for her due to her medical issues." Plaintiff cited her depression. Dr. Kathryn Steele reported her findings as follows:

> **CONCLUSIONS AND DIAGNOSTIC IMPRESSIONS**
> Melissa Laraway is a 44 year old, divorced (x2) Caucasian female who presented for evaluation to determine functional level. Medical health concerns were reported as Degenerative Disc Disease, Fibromyalgia, COPD, and arthritis. Mrs. Laraway reported mental health concerns of suffering with anxiety and depression secondary to the impact medical issues have on her daily functional level. She stated, in regards to anxiety and depressive symptoms, "Pain, that's what causes all of it." She

4

continued in stating that symptoms of anxiety and depression have occurred "Only since I lost my last job due to my back. All I do is sit or lie around. No joy anymore, can't do anything anymore. Think about not being able to do things and worry about what will happen when my mom cannot care for me anymore." She denied a diagnosis for an anxiety disorder or mood disorder. She further denied a history of outpatient mental health treatment and a history of psychiatric hospitalization.

The picture that emerged was one of a woman estimated to be functioning within the Average range. <u>Based on self report and observation, she does not appear to meet criteria for an anxiety disorder or for a mood disorder.</u> Disruption to daily functional level was reported as secondary to medical issues; specifically back pain. She appears to be having difficulty adjusting to the limitations her reported medical issues have on her functional level and on her overall quality of life.

Melissa Laraway's DSM-IV TR diagnostic picture may be best summarized as follows:

Axis I:    309.0 Adjustment Disorder With Depressed Mood
Axis II:   799.9 Diagnosis Deferred See Above
Axis III:        See Above
Axis IV:         Medical Problems
Axis V:    GAF: 55

**MEDICAL SOURCE OPINION**
**Understanding and remembering.** Mrs. Laraway would not have difficulty understanding and remembering detailed directions. She was able to understand and participate in a complex conversation without difficulty.

**Sustaining concentration and persistence.** In a structured environment, Mrs. Laraway displayed the ability to carry out simple and/or complex instruction without difficulty. She would be capable of maintaining concentration in the workplace and would likely be capable of completing work related tasks in an efficient, timely manner.

**Interacting with others.** Mrs. Laraway was cooperative and pleasant. She would be capable of interacting appropriately with co-workers and supervision. She appeared capable of maintaining socially appropriate standards of conduct in the workplace.

**Adapting to changes and requirements.** Mrs. Laraway appeared capable of responding appropriately to changes in routine and/or work setting. Again, her judgment appeared to be good. She appeared capable of recognizing and responding appropriately to hazards in her environment.

5

**CAPABILITY:**
Melissa Laraway appeared competent to manage her finances should she be awarded benefits in this case.

Id. at 283 (emphasis added).

The ALJ found that Plaintiff had severe impairments that included lumbar degenerative disc disease ("DDD") and post lumbar diskectomy. Id. at 14. Yet, the ALJ found that Plaintiff's impairments neither alone nor in combination satisfied the requirements for a disability under the Act and its regulations. Id. at 17. The ALJ found that Plaintiff retained the residual function capacity ("RFC") to perform:

> light work as defined in 20 CFR 404.1567(b) except she can occasionally balance, stoop, kneel, crouch, and crawl; occasionally climb ramps and stairs; no climbing of ladders, ropes, and scaffolds; and no unprotected heights and unguarded moving machinery.

Id. The ALJ found that Plaintiff could perform work that exists in significant numbers in the national economy, including work as a small products assembler, silver wrapper, and order caller. Id. at 23.

### B. Conclusions of Law

The Social Security Act defines "disability" as an inability "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1); see also 42 U.S.C. § 1382c(a)(3). A reviewing court's evaluation of the Commissioner's decision is based upon the entire record in the administrative hearing process. Jones v. Sec'y, Health and Human Servs., 945 F.2d 1365, 1369 (6th Cir. 1991). Judicial review is limited to a determination of whether substantial evidence exists in

the record to support the Commissioner's decision, and whether any legal errors were committed in the process of reaching that decision. Landsaw v. Sec'y of Health and Human Servs., 803 F.2d 211, 213 (6th Cir. 1986). "Substantial evidence is defined as 'more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" Rogers v. Comm'r of Soc. Sec., 486 F.3d 234, 241 (6th Cir. 2007) (quoting Cutlip v. Sec'y of Health & Human Servs., 25 F.3d 284, 286 (6th Cir. 1994)). Even if the evidence could also support a different conclusion, the ALJ's decision must stand, if substantial evidence supports the conclusion reached. Her v. Comm'r of Soc. Sec., 203 F.3d 388, 389-90 (6th Cir. 1999) (citing Key v. Callahan, 109 F.3d 270, 273 (6th Cir. 1997)).

As to Plaintiff's claim the ALJ failed to evaluate Dr. Burval's opinion that Plaintiff cannot work, the Act requires an impairment to be present and disabling for at least 12 continuous months. See Jones v. Comm'r of Soc. Sec., 336 F.3d 469, 474 (6th Cir. 2003) ("The Social Security Act defines disability as the inability to engage in any substantial gainful activity by reason of a medically determinable physical or mental impairment that can be expected to result in death or that has lasted or can be expected to last for a continuous period of not less than 12 months.") (citing 42 U.S.C. §§ 423(d)(1)(A), (d)(2)(A); 20 C.F.R. §§ 404.1505, 404.1509).

Plaintiff asserts a disability for her October 2011 and subsequent increasing pain in late 2011. (Docket Entry No. 11, Administrative Record, at 433, 445). Dr. Burval, who believed Plaintiff "cannot be an active member in the workforce," performed back surgery in January 2012. Id. at 258, 303. In his January 2012 examination, Dr. Burval stated Plaintiff's right leg pain was resolved, but observed that Plaintiff had developed some narcotics dependence, and prescribed medication to wean Plaintiff from narcotics. Id. at 306. In February 2012, Dr. Burval stated that Plaintiff's radiculopathy

7

had fully resolved, but Plaintiff needed pain management for her pain complaints. Id. at 304. In March 2012, Dr. Burval observed that Plaintiff "appears far more comfortable than she is stating" and he noted that Plaintiff had intact lower extremity strength and a normal gait. Id. at 305. In May 2012, Dr. Burval stated that Plaintiff had no signs of recurrent herniation or nerve compression, but still had degenerative disc disease which was not amenable to surgery. Id. at 303. Dr. Burval noted that Plaintiff "states" she cannot stand or sit. Id.

In June 2012, Plaintiff was seen at United Neighborhood Health Services by Dr. Ada-Nkem Emuwa, who prescribed medications for Plaintiff's back pain. Id. at 314. In April 2013, Plaintiff went to the emergency room for back pain, and stated that she had not been seen by a doctor in six months, but that her back pain was gradually worsening. Id. at 325. Plaintiff was seen at United Neighborhood, also in April 2013, and complained of worsening back pain. Id. at 323. A nurse practitioner prescribed several medications. Id. at 324.

In August 2013, Plaintiff was seen for an outer ear infection at United Neighborhood Health Services. Id. at 317. Plaintiff also complained of back pain and was advised to walk every day for 45 minutes due to arthritis. Id. Plaintiff stated that "bear OTC" (perhaps meaning Bayer) relieved her pain but that ibuprofen, previously prescribed, provided better pain relief. Id. at 319. Nurse Practitioner Luz Salazar prescribed ibuprofen 800mg. Id. at 321.

The ALJ stated that Dr. Burval's letter was entitled to "no weight," id. at 22, because the letter did not identify objective evidence and the last MRI did not reveal herniation or nerve compression, but did show degenerative disc disease, id. at 303. Second, the ALJ cited the lack of follow-up care for pain management as the doctor had suggested. Id. at 22, 303. Third, the ALJ noted that the doctor did not provide functional limitations, but instead simply concluded that

8

Plaintiff was disabled or unable to work by saying that she was. In such instances, the ALJ may reject the treating physician's opinion. See Dunlap v. Comm'r of Soc. Sec., 509 F.App'x 472, 476 (6th Cir. 2012) (finding that the ALJ correctly ruled that the treating physician's conclusion expressed in a single-sentence note ("due to pain is unable to work") was one properly reserved to the Commissioner). Finally, in March 2012, Dr. Burval noted that Plaintiff stated her pain was the same, but she "appears far more comfortable than she is stating." (Docket Entry No. 11, Administrative Record, at 305 (emphasis added)).

An ALJ may afford a treating physician's opinion less weight where, as here, the opinion is based primarily on subjective complaints. See Keeler v. Comm'r of Soc. Sec., 511 F.App'x 472, 473 (6th Cir. 2013) ("[I]t appeared to be based primarily on Keeler's subjective complaints, and it was contradicted by other evidence in the record . . . ."). A lack of supporting objective evidence is a significant factor that the ALJ may consider when evaluating any medical opinion. Without post-surgery treatment, a "conservative [] approach suggests the absence of a disabling condition." Branon v. Comm'r of Soc. Sec., 539 F.App'x 675, 678 (6th Cir. 2013). An ALJ may consider the medical evidence in evaluating Plaintiff's subjective complaints, although the ALJ may not reject subjective complaints "solely" on this basis. Kirkland v. Comm'r of Soc. Sec., 528 F.App'x 425, 427 (6th Cir. 2013) (quoting 20 C.F.R. § 404.1529) (noting that ALJ also considered medical opinion evidence).

Plaintiff's next contention is that the ALJ "bases his decision on non-examining sources['] opinions contrary to the clear directives" of the regulations. (Docket Entry No. 14 at 4). The ALJ found that State non-examining physician's opinions were supported by the objective medical evidence and entitled to substantial weight. (Docket Entry No. 11, Administrative Record, at 21-22

(citing id. at 271-80)). Although the ALJ is not bound by a non-examining physician's opinion, the ALJ may consider such an opinion in making his disability determination. 20 C.F.R. §§ 404.1527, 416.927; SSR 96-6p; see also Reynolds v. Sec'y of Health and Human Servs., 707 F.2d 927, 930 (6th Cir. 1983).

As to the ALJ's finding on Plaintiff's credibility, the ALJ noted that the objective evidence failed to substantiate disabling impairments to the degree Plaintiff described. (Docket Entry No. 11, Administrative Record, at 20). The ALJ noted, two weeks after surgery Plaintiff's radiating pain was gone, she had full strength, and a normal posture and gait. Id. at 20, 306. An MRI after surgery did not reveal any signs of recurrent herniation or nerve compression. Id. at 312. The ALJ noted that Plaintiff's post-surgery medication Tramadol is for mild to moderate pain. Id. at 20, 300. The ALJ noted that Plaintiff's pain relief at the time of the hearing was limited to over-the-counter medications. Id. at 20. "[M]odest treatment is inconsistent with a finding of disability." Curler v. Comm'r of Soc. Sec., 561 F.App'x 464, 475 (6th Cir. 2014). The ALJ also cited Plaintiff's April 2013 emergency room treatment record reflecting that Plaintiff had not been to the doctor for six months. (Docket Entry No. 11, Administrative Record, at 20, 325). Failure to seek treatment is not indicative of a disabling impairment. Fourth, Plaintiff testified that she was inactive. Id. at 41-42. A Nurse Practitioner deemed Plaintiff's condition adequate to prescribe that Plaintiff walk for 45 minutes each day. Id. at 20, 317; see Blaim v. Comm'r of Soc. Sec., 595 F.App'x 496, 499 (6th Cir. 2014) ("Even the mildness of Blaim's treatment-mostly pain medication, weight loss, and exercise-suggested that his ailments were comparatively mild."). Fifth, the ALJ considered Plaintiff's daily activities. (Docket Entry No. 11, Administrative Record, at 15, 20, 134-41, 164-71). The ALJ may consider daily activities as one factor in the evaluation of subjective complaints. See Temples v.

Comm'r of Soc. Sec., 515 F.App'x 460, 462 (6th Cir. 2013).

Finally, the ALJ considered Plaintiff's non-compliance with treatment and perceived narcotics dependence that was noted by her doctors. (Docket Entry No. 11, Administrative Record, at 20, 306). Drug seeking behavior is an important credibility factor for the ALJ to consider. See Lawson v. Comm'r of Soc. Sec., 192 F.App'x 521, 528 (6th Cir. 2006) (including drug-seeking behavior in the ALJ's credibility analysis); Coffman v. Colvin, No. 2:10-0115, 2013 WL 3465291, at *15 (M.D. Tenn., July 10, 2013) ("Perhaps most importantly, the ALJ noted specific instances in which the plaintiff attempted to exaggerate her symptoms, was noncompliant with prescribed medication, or was suspected by her medical care providers of drug seeking behavior.").

Plaintiff notes her inability to afford more significant treatment after her surgery. (Docket Entry No. 15 at 3). The ALJ cited Plaintiff's emergency room visit in 2013, (Docket Entry No. 11, Administrative Record, at 325), her visit with a doctor for pain medications, id. at 314-15, and outer ear infection, id. at 317, as reflective of her ability to seek some medical treatment, see Moore v. Comm'r of Soc. Sec., No. 14-1123-T, 2015 WL 1931425, at *3 (W.D. Tenn. Apr. 28, 2015) (citing Goff v. Barnhart, 421 F.3d 785, 793 (8th Cir.2005)) ("Plaintiff argues that his lack of treatment is because he did not have medical insurance. However, there is no evidence that he ever sought treatment offered to indigents or was denied medical treatment due to an inability to pay.").

The Court concludes that the ALJ properly considered Plaintiff's credibility, and the ALJ's findings were supported by substantial evidence. "We have held that an administrative law judge's credibility findings are virtually 'unchallengeable.'" Ritchie v. Comm'r of Soc. Sec., 540 F.App'x 508, 511 (6th Cir. 2013) (quoting Payne v. Comm'r of Soc. Sec., 402 F.App'x 109, 112-13 (6th Cir. 2010)).

For these reasons, the Court concludes that the Plaintiff's motion for judgment on the administrative record (Docket Entry No. 13) should be denied and the Commissioner's decision affirmed.

An appropriate Order is filed herewith.

**ENTERED** this the 23rd day of September, 2016.

WILLIAM J. HAYNES, JR.
Senior United States District Judge